# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **UNITED STATES OF AMERICA** |
| v. |
| **VAN ETHERIDGE,** |
| **Defendant.** |

Criminal Action No. 06-0133 (TFH)

**FILED**

NOV 21 2013

Clerk, U.S. District and
Bankruptcy Courts

## MEMORANDUM OPINION

Before the Court is Defendant Van Maurice Etheridge's renewed Motion for Early Termination of Supervised Release [Dkt. No. 32]. After carefully considering the motion, the government's opposition, and the record of this case, the Court GRANTS the motion.

### I. Background

Between 2001 and 2005, Mr. Etheridge bought, sold, and transported wholesale quantities of methamphetamine as part of a large-scale narcotics conspiracy. Mr. Etheridge took responsibility for his actions and pled guilty to conspiracy to possess with intent to distribute fifty grams or more of methamphetamine or five-hundred grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(viii). Once released from prison, Mr. Etheridge began his five year term of supervised release. He has now served four-fifths of his five year sentence.

On February 2, 2013, Mr. Etheridge filed his first motion asking this Court to terminate his supervised release, or, in the alternative, to modify the terms of the release to allow him to travel freely in connection with his employment. Def.'s 1st Mot. at 1 [Dkt. No. 30]. Mr. Etheridge explained that he has successfully completed substance abuse treatment, satisfied all

financial obligations, participated in mental health programs as directed by the Probation Office, and otherwise complied with the terms of his supervised release. *Id.* at 1-2. Mr. Etheridge has been drug free for six years and has meritoriously held the same job for more than five years. *Id.* at 2. In addition, Mr. Etheridge had recently been promoted to a position that required travel on short notice, but the conditions of his release prevented him from traveling without permission. *Id.* On April 3, 2013, this Court denied Mr. Etheridge's request to terminate his supervised release, but modified the conditions of his release to allow him to travel freely within the United States for business purposes. The Court informed Mr. Etheridge that it would entertain a renewed in October of 2013, after Mr. Etheridge had successfully completed four out of the five years of his supervised release term. Mr. Etheridge renewed his motion at that time. Def's 2d Mot. [Dkt. No. 32]

At the hearing on the renewed motion, Mr. Etheridge explained through counsel that the organization he worked for had recently expanded internationally, and as a result, Mr. Etheridge's employer would require him to travel abroad in the near future. This Court had previously lifted the requirement that Mr. Etheridge seek permission before domestic travel. But before Mr. Etheridge can enter another country, his probation officer is required inform the receiving country's consulate of Mr. Etheridge's release status. *See* Monograph 109, *Supervision of Federal Offenders* § 460.55.30(c). Counsel explained that if a foreign government denied Mr. Etheridge the right to travel to that country, Mr. Etheridge might lose his job.

This Court conferred with Mr. Etheridge's probation officer concerning his progress and behavior while on supervised release. The Probation Office opposed Mr. Etheridge's petition due to the seriousness of the charged offense. However, Mr. Etheridge's probation officer confirmed

that Mr. Etheridge's recovery was remarkable. Mr. Etheridge has never had a positive drug test or failed to check in as required, an accomplishment his probation officer described as extremely rare. In addition, Mr. Etheridge's probation officer explained that Mr. Etheridge was less likely to relapse into his drug addiction because he had found positive interests, including physical exercise and regular attendance at meetings for recovering addicts, to replace the role that drug use had previously played in his life.

Though the United States does not dispute that the defendant has complied with the terms of his release, it filed an opposition to the request for early termination. Resp. to Def.'s 2d Mot [Dkt. No. 33]. The government argues that given the seriousness of Mr. Etheridge's offense and the sentencing benefits he has already received, Mr. Etheridge should be required to serve the entirety of his sentence. *Id.* at 1-2.

## II. Discussion

All post-sentencing changes to the terms of a defendant's supervised release are governed by 18 U.S.C. § 3583(e). Before making any modification to the defendant's supervised release, a court must consider many of the statutory factors as enumerated in 18 U.S.C § 3553(a), covering the same "general punishment issues" that the court would consider when imposing an initial sentence, "such as deterrence, public safety, rehabilitation, proportionality, and consistency, when it decides to modify, reduce, or enlarge the term or conditions of supervised release." *United States v. Lussier,* 104 F.3d 32, 35 (2d Cir.1997) (citing 18 U.S.C. § 3583(e)).[1] The Court

---

[1] 18 U.S.C. § 3583(e) instructs the court to consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the

- 3 -

is required to consider all the statutory factors, but need not make specific finding as to each one. *See United States v. Lowe*, 632 F.3d 996, 998 (7th Cir. 2011) ("[A]lthough a court need not make explicit findings as to each of the factors, the record must reveal that the court gave consideration to the § 3553(a) factors."); *United States v. Gammarano*, 321 F.3d 311, 315-16 (2d Cir. 2003) (finding that "a statement that [the district court] has considered the statutory factors is sufficient." (quoting *United States v. Gelb,* 944 F.2d 52, 56-57 (2d Cir.1991)) (internal quotation marks omitted)).

After weighing the relevant § 3553(a) factors, a district court may terminate the defendant's supervised release "at any time after the expiration of one year of supervised release" if the court is satisfied that two requirements are met. 18 U.S.C. § 3583(e)(1). First, early termination must be "warranted by the conduct of the defendant released." *Id.* Second, early termination must be in "the interest of justice." *Id.* The Judicial Conference on Criminal Law has elaborated on 18 U.S.C. § 3583(e)(1) statutory criteria and recommended that parole

---

defendant;
(2) the need for the sentence imposed—
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—[or]
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .
(5) any pertinent policy statement [issued by the Sentencing Commission]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).

officers evaluate nine factors when deciding whether to approve early termination of supervised release. Those factors are:

> **(1)** Stable community reintegration (e.g., residence, family, employment);
> **(2)** Progressive strides toward supervision objectives and in compliance with all conditions of supervision;
> **(3)** No aggravated role in the offense of conviction, particularly large drug or fraud offenses;
> **(4)** No history of violence . . .
> **(5)** No recent arrests or convictions...
> **(6)** No recent evidence of alcohol or drug abuse;
> **(7)** No recent psychiatric episodes;
> **(8)** No identifiable risk to the safety of any identifiable victim; and
> **(9)** No identifiable risk to public safety based on the Risk Prediction Index.

Monograph 109, *Supervision of Federal Offenders* § 380.10(b)(1)-(9); *see United States. v. Grimaldi*, 482 F.Supp.2d 248 (D. Conn. 2007) (considering these factors in a motion for supervised release); *United States v. Weintraub*, 371 F. Supp. 2d 164, 166 (D. Conn. 2005) (same).

### A. Early Termination is Warranted by the Conduct of the Defendant

Section 3583(e)(1) does not specify when early termination is "warranted by the conduct of the defendant released." In *United States v. Lussier*, 104 F.3d 32, 33 (2d Cir. 1997), the Second Circuit considered a related provision, § 3583(e)(2), which allows the district court to "extend a term of supervised release" or "modify, reduce, or enlarge the conditions of supervised release." 18 U.S.C. § 3583(e)(2). The court found that § 3583(e)(2) does not permit a court to modify term of supervised release based on the illegality of the initial sentence and explained that the purpose of § 3583(e)(2) was to give the district courts "authority" to alter its original imposition of supervised release "in order to account for new or unforeseen circumstances":

> Occasionally, changed circumstances—for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or

> restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a). . . .

*Lussier*, 104 F.3d at 36. A number of courts have used *Lussier* as a guide when considering motions to terminate supervised release under § 3583(e)(1) as well as motions to modify terms under § 3583(e)(2).[2] These courts have interpreted *Lussier* as "concluding early termination [is] reserved for rare cases of 'exceptionally good behavior.'" *See also United States v. Atkin*, 38 Fed. Appx. 196, 198 (6th Cir. 2002) (finding that "[e]arly termination of supervised release is a discretionary decision that is only warranted in cases where the defendant shows changed circumstances—such as exceptionally good behavior.") (emphasis added) (citing *Lussier*, 104 F.3d at 36). *But see United States v. Garrasteguy*, 559 F.3d 34, 43 (1st Cir. 2009) (noting that the standard for modification is an open question in the First Circuit, but suggesting that "a somewhat relaxed showing" than the *Lussier* standard "might suffice" at least in some circumstances).

*Lussier* did not define what "exceptionally good behavior" would rise to the level of "changed circumstances." But district courts applying *Lussier* to § 3583(e)(1) petitions have found that even perfect compliance with conditions of release does not qualify as "exceptionally good behavior" warranting early termination. These courts have noted that "[m]odel prison

---

[2] Since *Lussier* was decided, there have been considerable doubts raised over whether § 3583(e)(2) requires "changed circumstances" before a court may modify the terms of a defendant's supervised release. As other courts have noted that the statutory language in § 3583(e) does not require "does not require new evidence, nor even changed circumstances in the defendant's life." *United States v. Davies*, 380 F.3d 329, 332 (8th Cir.2004). *See also United States v. Begay*, 631 F.3d 1168, 1170–71 (10th Cir. 2011) ("Although [defendant] asks us . . . to limit the district court's authority to modify special conditions of supervised release to only those cases where the government can show a change in circumstances, we refuse to impose that limitation on the district court's authority."). The District of Columbia Circuit has not yet decided the issue.

conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. McKay*, 352 F.Supp.2d 359, 361 (E.D.N.Y. 2005). In *United States v. Medina*, the court found that though defendant's "post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule." 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998).Therefore, a defendant must show something "of an unusual or extraordinary nature" in addition to full compliance. *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003).

Unlike the defendants in *McKay*, *Caruso*, and *Medina*, Mr. Etheridge's progress goes beyond "full compliance with the terms of supervised release" that is "expected of a person" in Mr. Etheridge's position, *see McKay*, 352 F.Supp.2d at 361. At the hearing on his motion, Mr. Etheridge gave a statement explaining that as part of his recovery from his methamphetamine addiction, he regularly attends meetings and sponsors young addicts. Mr. Etheridge avoids parties other places where alcohol or drugs will be served, and no longer associates with individuals who consume drugs. He has also reconciled with his adult daughters, from whom he had previously been estranged. Mr. Etheridge has held a job as a scheduler at a well-regarded non-profit organization for more than five years, and has been promoted to a position of higher responsibility. In 2012, he received an award for Outstanding Employee Achievement. He keeps himself busy with physical activities, exercise. These activities demonstrate good behavior "above and beyond what is required for all supervisees" and therefore "merit[] special consideration." *United States. v. Grimaldi*, 482 F.Supp.2d 248, 251 (D. Conn. 2007); *see also United States v. Nelson*, 2012 WL 3544889 at *3 2012 WL 3544889

(E.D. Wis. Aug. 16, 2012) (finding that early termination was appropriate when the defendant held two jobs and had completed more community service hours than required his sentence required).

Other cases have found that this type of "exceptionally good behavior" warrants early termination. In *United States v. King*, the court found that early termination following a conviction for intent to distribute methamphetamines because the defendant, "[u]nlike many, . . . seems to have turned himself around." 551 F.Supp.2d 1298, 1300 (D. Utah 2008). The defendant in *King* not only stayed out of trouble and completed drug and alcohol treatment, but also "disassociated himself from destructive influences and peers." *Id.* at 1301. The court found that defendant's "progress has been exceptional" and after considering "the particular circumstances of this case, along with the factors set forth in 18 U.S.C. § 3553(a)," early termination was appropriate. *Id.* Likewise, in *United States v. Rentas* court found that the defendant satisfied *Lussier* because he had been steadily employed since his release, maintained a stable family life, passed all unannounced drug tests, was never difficult to locate, and had no run-ins with law enforcement. 573 F. Supp. 2d 801, 801-02 (S.D.N.Y. 2008); *see also United States v. Kapsis*, 2013 WL 1632808 *1 (S.D.N.Y. Apr. 16, 2013) (finding "changed circumstances" after the defendant "maintained steady employment, successfully completed treatment, and had no negative contacts with law enforcement.").

Like the defendants in *King, Rentas,* and *Kapsis*, Mr. Etheridge has demonstrated the type of "exceptionally good behavior" that "render[s]" his previously imposed term or condition of release "too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)," *Lussier*, 104 F.3d at 36. Mr. Etheridge has "disassociated himself from destructive

influences and peers" and has "turned his life around." *King*, 551 F.Supp.2d at 1300, 1301. Based on the record before this Court, which the government does not dispute, Mr. Etheridge satisfies nearly all of the Judicial Conference factors relating to post-release conduct, *see* Monograph 109, *Supervision of Federal Offenders* § 380.10(b). Mr. Etheridge has shown successful "community reintegration," *id.* at § 380.10(b)(1), by maintaining employment as a scheduler at a prestigious organization and reconciling with his family. He has made such impressive "progressive strides toward supervision objectives," *id.* at § 380.10(b)(2), that his probation officer describes Mr. Etheridge's case as one of the best he has seen. He has no recent arrests, drug abuse, or psychiatric episodes, *see id* at § 380.10(b)(5)-(7). Mr. Etheridge presents no identifiable risk to the safety of any individual victim or to the public, *see id* at § 380.10(b)(8)-(9).

The government argues that to the extent that the purpose of supervised release is rehabilitation, "citizens should require that defendant receive every second of that benefit." Gov't Opp. at 2. But the record before this Court shows that in this case, further rehabilitation is not necessary. *See United States v. Pregent*, 190 F.3d 279, 282-83 (4th Cir. 1999) ("The plain language of the statute illustrates that § 3583(e) . . . allows a conduct-based inquiry into the continued necessity for supervision . . . ). In sum, Mr. Etheridge's post-release recovery and successes have been extraordinary and convince this Court that early termination is "warranted by the conduct of the defendant," *see* 18 U.S.C. § 3583(e)(1)(A).

### B. Early Termination of is in the Interest of Justice
The government argues that to extent that supervised release is punitive, Mr. Etheridge deserves to serve out his sentence due to the serious of his crime. Gov't Opp. at 2. Mr.

Etheridge was involved in a large scale methamphetamines enterprise, and his participation in the conspiracy was significant. The government is correct that Mr. Etheridge's "aggravated role in the offense of the conviction," particularly because Mr. Etheridge was convicted of a large-scale drug offense, counsels against early termination. *See* Monograph 109, *Supervision of Federal Offenders* § 380.10(b)(3). The government credits defendant for taking responsibility for his actions but states that the defendant has already received the substantial benefit of a reduced sentence and is not entitled to any additional benefit. Gov't Opp. at 2.

The governing statute requires this Court to consider the "the nature and circumstances of the offense" of conviction is mandated by statute. 18 U.S.C. § 3553(a)(7). But "it is fair to analyze" that factor "in light of the facts of a particular case." *United States v. Harris*, 689 F. Supp.2d 692, 695 (S.D.N.Y. 2010). If Mr. Etheridge serves the final year of his supervised release, he may be unable to travel abroad for work, thus putting his employment in jeopardy. Other cases have weighed this type of threat to the defendant's employment against any potential benefits of continuing supervised release and have found that early termination was the just result. In *Harris*, the defendant asked the court to terminate his supervised release following a conviction for defrauding banks and other financial institutions. *Id.* at 693. The defendant had "seemingly against the odds" found employment in the industry where he had worked before his conviction. *Id.* at 694. But like Mr. Etheridge, the defendant in *Harris* could not travel abroad without notifying Probation Office, which limited his opportunities to advance and endangered his employment. *Id.* The court acknowledged that "the magnitude" of the offense and the defendant's "role as its architect count against him." *Id.* at 695-96. But the court found that the

other § 3553(a) factors favored early termination, and outweighed any benefit of continuing supervised release:

> There are two possible resolutions to this case. The Court can terminate Harris's supervised release, do away with crippling obstacles to his professional advancement, and make straight his path to rehabilitation and redemption. Or the Court can require Harris to serve his full term of supervised release, leave him blocked and at risk in his employment, and confer no benefit of any significance upon the victimized banks. Which resolution is 'in the interest of justice?' The question is not close. Justice requires the termination of Harris's supervised release.

*Id.* at 695. Likewise, in *United States v. Schuster*, the court balanced the possible outcomes of the court's decision to decide which was in the interest of justice. 2002 WL 31098493 at *1 (S.D.N.Y. Sept. 19, 2002). The court noted that would be "of value both to defendant and his family and also to the community for him to obtain productive employment." *Id.* On the other hand, continuing the defendant's probation would have "no real value as far as law enforcement or any other community interest is concerned." *Id.*

In this case, as in *Schuster* and *Harris*, requiring Mr. Etheridge to serve his one remaining year of supervised release would leave an obstacle to Mr. Etheridge's career and successful reintegration in society, but would have a de minimis (if any) purpose in furthering the sentencing purposes in § 3553(a). On the other hand, several other § 3553(a) factors counsel in favor of granting early termination. Mr. Etheridge is no longer a threat to the public. *See* 18 U.S.C. § 3553(a)(2)(C). Nor does this Court believe he would benefit from further correctional treatment, vocational training, or medical care. *See* 18 U.S.C. § 3553(a)(2)(D). There is no need to provide restitution to any victims. *Id.* at § 3553(a)(7). This Court finds that Mr. Etheridge's post-conviction conduct demonstrates that he has changed his behavior so significantly that

additional supervision—whether for the benefit of the public or Mr. Etheridge—is unnecessary. Mr. Etheridge has taken impressive steps in his recovery from the methamphetamine addiction that led to his involvement in criminal activities. After carefully considering the 18 U.S.C. § 3553(a) factors, this Court finds that early termination is "in the interest of justice." *see* 18 U.S.C. § 3583(e)(1)(A).

### III. Conclusion

For the reasons stated above, Defendant Etheridge's Motion for Termination of Supervised Release is GRANTED.

SO ORDERED.

November 20, 2013

Thomas F. Hogan
United States District Judge